[Cite as *State v. Whitterson*, 2012-Ohio-2940.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-110207 |
| | | TRIAL NO. B-0907709 |
| Plaintiff-Appellee, | : | |
| | | |
| vs. | : | *O P I N I O N.* |
| | | |
| KELLISHA WHITTERSON, | : | |
| | | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  June 29, 2012

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Scott M. Heenan,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Robert R. Hastings, Jr.,* for Defendant-Appellant.

Please note:  This case has been removed from the accelerated calendar.

**HILDEBRANDT, Presiding Judge**.

{¶1} Defendant-appellant Kellisha Whitterson appeals the judgment of the Hamilton County Court of Common Pleas convicting her of aggravated vehicular homicide, a felony of the second degree.

{¶2} In September 2009, a Cincinnati police officer filed three delinquency complaints against Whitterson in the Hamilton County Juvenile Court for aggravated vehicular homicide, involuntary manslaughter, and leaving the scene of an accident. The state then filed a motion for a discretionary bindover to transfer the case to the general division of the common pleas court.

### The Bindover Proceedings

{¶3} On October 21, 2009, the juvenile court conducted a hearing to determine whether there was probable cause to believe that Whitterson had committed the charged offenses. At the hearing, Whitterson stipulated that she had been 17 years old at the time of the alleged delinquencies. She was in the legal custody of the Hamilton County Department of Jobs and Family Services (HCJFS).

{¶4} Alicia Ballew testified that, on September 26, 2009, she was visiting her cousin on Clarion Avenue in the Evanston neighborhood of Cincinnati. Her son, 13-year-old Dayshaan Ballew, was walking on the sidewalk on Clarion.

{¶5} Mrs. Ballew stated that she heard a screeching sound and saw a car turn onto Clarion. The car crossed the double-yellow line, veered onto the sidewalk, and struck a sign post. Mrs. Ballew then ran towards the car in an attempt to get the driver to stop. The driver, whom Mrs. Ballew identified as Whitterson, briefly stopped but sped away at the urging of a man sitting in the passenger seat.

{¶6} After Whitterson had left, Mrs. Ballew went down the street and discovered that Dayshaan had been struck. He had suffered massive head trauma and died the following morning.

{¶7}     Richard Humphrey was Dayshaan's father.  He was on the front porch of a house on Clarion when he heard the car speed around the corner.  He testified that the car had veered onto the sidewalk and had struck the sign post and Dayshaan.  Humphrey stated that he had seen Dayshaan fall after being hit in the back by the post.

{¶8}     Officer David Moore was an accident-reconstruction expert with the Cincinnati Police Division.  He measured the markings made by the car and concluded that the car had veered completely onto the sidewalk and grassy area.  According to Moore, the car had stayed on the sidewalk area for approximately 48 feet before accelerating back onto the roadway.

{¶9}     Moore further testified that Whitterson had been identified in a surveillance video at a nearby gas station.  The video ultimately led to the arrest of Whitterson, who admitted that she did not have a driver's license and had never before operated a motor vehicle.

{¶10}     The juvenile court found that the state had established probable cause.  After a hearing to determine whether Whitterson was amenable to rehabilitation in the juvenile justice system, the court relinquished jurisdiction and transferred the case to the general division of the common pleas court.  Whitterson was indicted for the offenses, and the case proceeded to a jury trial.

### Evidence Adduced at Trial

{¶11}     At trial, Mrs. Ballew essentially repeated the testimony she had given at the probable-cause hearing.  Robert Allen, a bystander at the scene of the incident, testified that he had seen Whitterson turn onto Clarion, veer onto the sidewalk, and strike Dayshaan.  A deputy coroner testified that Dayshaan had suffered injuries to his lower legs consistent with having been struck by a car.  She stated that the cause of death was blunt impact to the head and torso consistent with Dayshaan having been struck by a car and propelled into another object.

{¶12}    Whitterson took the stand in her own defense and testified that she had been with Jarmel Jackson on the day of Dayshaan's death. She stated that Jackson had offered to teach her how to drive and that she had accepted that offer because she wanted to learn to drive before she turned 18. According to Whitterson, she had remembered hitting the sign post but had not realized that Dayshaan had been injured until Jackson informed her later in the day. She testified that she had fled the scene and had lied to police about the incident because she was frightened and confused.

{¶13}    The jury found Whitterson guilty of aggravated vehicular homicide and involuntary manslaughter, but it acquitted her of leaving the scene of an accident. The trial court sentenced her to seven years' imprisonment for aggravated vehicular homicide and merged the involuntary-manslaughter count for purposes of sentencing.

### Sufficiency of the Complaints

{¶14}    In her first assignment of error, Whitterson argues that the juvenile court did not have jurisdiction to conduct a bindover hearing because the complaints were defective.

{¶15}    Juv.R. 10(B) states that the complaint must "[s]tate in ordinary and concise language the essential facts that bring the proceeding within the jurisdiction of the court, and in juvenile traffic offense and delinquency proceedings, shall contain the numerical designation of the statute or ordinance alleged to have been violated." R.C. 2152.12(B), governing procedures for discretionary bindovers, provides that "[e]xcept as provided in division (A) of this section, after a complaint has been filed alleging that a child is a delinquent child for committing an act that would be a felony if committed by an adult, the juvenile court at a hearing may transfer the case if the court finds all of the following * * *."

4

{¶16}     In this case, the complaints satisfied the requirements of both the rule and the statute. Each of the complaints alleged that Whitterson was 17 years old at the time of the alleged acts and that she "appears to be a delinquent child" for violating the various enumerated statutes. With respect to the offense for which she was convicted, the complaint set forth the essential facts and averred that Whitterson had violated "Section 2903.06(A)(2) of the Ohio Revised Code." The substance of the complaint thus conveyed that Whitterson was being charged as a juvenile for an act that would constitute a felony. The mere omission of the words "for committing an act that would be a felony if committed by an adult" did not deprive the juvenile court of jurisdiction. Accordingly, we overrule the first assignment of error.

### Notice to HCJFS

{¶17}     In her second assignment of error, Whitterson contends that the juvenile court was without jurisdiction to proceed because it did not give HCJFS the mandatory notice of the proceedings as custodian of the juvenile under Juv.R. 30 and R.C. 2152.12(G). But because the documents filed with the juvenile court have not been transmitted to this court on appeal, any error claimed in the deficiency of notice is not reflected in the record. App.R. 9. Accordingly, we overrule the second assignment of error.

### Transfer of Jurisdiction

{¶18}     We address the next assignments of error out of order. In her fourth assignment of error, Whitterson argues that the juvenile court abused its discretion in concluding that the factors favoring the transfer of jurisdiction to the common pleas court outweighed the factors favoring retaining jurisdiction.

{¶19}     A bindover proceeding has two components: a probable-cause determination and an amenability determination. In the latter component, the juvenile court may transfer jurisdiction if it finds that the child is not amenable to rehabilitation within the juvenile justice system and that, to ensure the safety of the

5

community, the child should be subject to adult sanctions. R.C. 2152.12(B)(3). R.C. 2152.12(D) lists the factors in favor of transferring jurisdiction, while R.C. 2152.12(E) lists the factors in favor of retaining jurisdiction. In addition to the factors specifically listed in the statute, the juvenile court is instructed to consider "any other relevant factors." R.C. 2152.12(D) and (E). A juvenile court's amenability determination under R.C. 2152.12 will not be reversed unless the court has abused its discretion. *State v. Drane,* 2d Dist. No 23862, 2012-Ohio-1978, ¶ 13; *State v. Douglas,* 20 Ohio St.3d 34, 37, 485 N.E.2d 711 (1985); *State v. Carmichael,* 35 Ohio St.2d 1, 298 N.E.2d 568 (1973), paragraphs one and two of the syllabus.

{¶**20**}     In this case, the trial court did not abuse its discretion. At the time of the amenability hearing, Whitterson was less than two months from her 18th birthday. She had had numerous prior contacts with the juvenile justice system and had been through a number of rehabilitative programs. As for the instant offense, she caused the death of a child through her reckless behavior.

{¶**21**}     Whitterson cites the court-ordered psychological evaluation in arguing that she suffered from emotional difficulties and had limited mental functioning. But the juvenile court took the evaluation into consideration and explicitly weighed the factors outlined in R.C. 2152.12. Under these circumstances, we cannot say that the court's decision to relinquish jurisdiction was arbitrary, unreasonable, or unconscionable. Therefore, we overrule the fourth assignment of error.

### Ineffective Assistance of Counsel

{¶**22**}     In her third assignment of error, Whitterson argues that she was deprived of the effective assistance of trial counsel in the bindover proceedings.

{¶**23**}     To establish ineffective assistance of counsel, the defendant must demonstrate that counsel's performance fell below an objective standard of reasonable performance and that prejudice arose from counsel's performance.

*Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus.

{¶24} In the case at bar, we find no deficiency in counsel's performance. We first discuss counsel's performance with respect to the probable-cause hearing. At a probable-cause hearing held under Juv.R. 30(A), the state is required to prove only that "there is probable cause to believe that the child committed the act alleged and that the act would be an offense if committed by an adult." *See also* R.C. 2152.12(B)(2).

{¶25} Whitterson argues that counsel was deficient in failing to explore inconsistencies in witnesses' statements and in failing to draw the court's attention to the coroner's conclusion that the cause of Dayshaan Ballew's death was listed as an "accident." She also maintains that counsel was ineffective in failing to pursue the argument that the car had hit the sign post rather than Dayshaan, leading to the conclusion that his death was a "freak accident" resulting from negligence rather than recklessness.

{¶26} We find no merit in these arguments. The sole issue in the first hearing was whether there was probable cause to believe that Whitterson had committed the acts as alleged in the complaints. It was not a trial on the merits. Counsel vigorously cross-examined the state's witnesses and made cogent arguments about the alleged weaknesses in the state's evidence. We are not persuaded that, had counsel pursued the strategies advanced in the instant appeal, the outcome of the hearing would have been different.

{¶27} Whitterson also alleges deficiencies with respect to the amenability hearing. She argues that counsel failed to present evidence concerning her abandonment by her family and her mental and emotional difficulties. She also argues that counsel failed to emphasize that many of her contacts with the juvenile

justice system had been status offenses, as opposed to delinquencies, and that many of the cases had been dismissed.

{¶28}    Once again, we find no merit in this argument. Whitterson's mental and emotional difficulties were fully explained in the psychological evaluation ordered by the court, and the court demonstrated that it had fully considered the nature of Whitterson's involvement with the juvenile system. Whitterson has thus failed to establish that counsel's performance was deficient or that any alleged deficiency deprived her of a fair hearing. We overrule the third assignment of error.

### Lesser-Included Offense

{¶29}    In her fifth assignment of error, Whitterson contends that the trial court erred in refusing to instruct the jury on the lesser-included offense of vehicular homicide.

{¶30}    Vehicular homicide under R.C. 2903.06(A)(3) is a lesser-included offense of aggravated vehicular homicide under R.C. 2903.06(A)(2)(a). *State v. Beasley*, 1st Dist. No. C-940899 1995 Ohio App. LEXIS 3176 (Aug. 2, 1995). The difference lies in the mens rea requirements: R.C. 2903.06(A)(2)(a) requires the state to prove recklessness, whereas R.C. 2903.06(A)(3) requires proof of only negligence. *Id.* But a trial court is required to give an instruction on a lesser-included offense only where the evidence supports a finding of guilt on the lesser offense and an acquittal on the greater offense. *Id.*; R.C. 2945.74.

{¶31}    Under R.C. 2901.22(C), "[a] person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature." By contrast, under R.C. 2901.22(D), "[a] person acts negligently when, because of a substantial lapse from due care, he fails to perceive or avoid a risk that his conduct may cause a certain result or may be of a certain nature."

{¶32}    In the case at bar, we find no error in the trial court's refusal to instruct the jury on vehicular homicide.  Whitterson's decision to drive on a busy street knowing that she was not licensed to drive, had not been trained to drive, and had never operated a car, went beyond mere negligence and constituted a perverse disregard of a known risk.  Thus, the evidence did not support an acquittal on the greater offense and a conviction on the lesser offense.  We overrule the fifth assignment of error.

### Involuntary Manslaughter

{¶33}    In her sixth and final assignment of error, Whitterson argues that the trial court erred in overruling her motion to dismiss the involuntary-manslaughter charge because the underlying misdemeanor of driving without a license had been amended to an unclassified misdemeanor.  But because Whitterson was not sentenced for involuntary manslaughter, any error was harmless.  *See State v. Powell,* 49 Ohio St.3d 255, 263, 552 N.E.2d 191 (1990).  Thus, we overrule the sixth assignment of error.

### Conclusion

{¶34}    The judgment of the trial court is affirmed.

Judgment affirmed.


CUNNINGHAM and DINKELACKER, JJ., concur.


Please note:

The court has recorded its own entry this date.


9